322-0349, the people of the state of Illinois, Appali, versus Ashish Gupta, appellant. Thank you. I apologize, I forgot that there had been a change of presiding judge and I was waiting for Bill to start this. I've left. Okay, so Mr. Verrill, are you ready to start? I am. You may proceed. Thank you. Okay. Good morning, your honors, counsel. I'm Steve Verrill with the Office of the State Appellate Defender, 3rd District, for the defendant-appellant Ashish Gupta. May it please the court, I've raised three issues in the briefs in this case, and it's a direct appeal from my client's conviction, convictions of four counts of violation of a stalking no-contact order. The first issue that I've raised is a challenge to the sufficiency of the evidence for count three. The second one is a jury instruction issue that applies to all four of the counts. And the third issue is a public defender fee issue. I don't plan on talking about the public defender fee issue unless your honors have questions about that. I intend to instead focus on the first two issues. And I'd like to start with the second issue, the jury instruction error. So the statute defining the offense for violation of a stalking no-contact order says that a person commits the offense if they knowingly commit an act prohibited by a stalking no-contact order. And it appears that there's really no dispute here that it is an element of the offense that the person know that their conduct is such that it's in violation of the order. And so the jury instructions here, which omitted that element of the offense, omitted the term knowingly, were in error because they failed to inform the jury of that element of the offense that the defendant knowingly committed an act in violation of the order. And to the, you know, any argument otherwise would ultimately go against U.S. Supreme Court and Illinois Supreme Court precedent that has held that omitting an element of the jury instructions is something that violates the right to constitutional rights to due process and a jury trial. Well, don't we review this really as harmless error, whether it is harmless? The question then becomes, yes, whether the error during constitutional jury instruction error was harmless. And so, you know, in my briefs, I've argued that the type of error in this case involving a disputed element essentially essential to the determination of the defendant's guilt or innocence is something that cannot be found to be harmless. But even if this court believes that there are circumstances where it could be, I think those circumstances are rare and that this is not a case where the error would be harmless. Well, you have to show, I think, in the burden is on the state to say it's not harmless. So aren't you trying to go to argue that that error contributed to the verdict in effect? Yes. Okay. How so? Okay. So there are, I would split the analysis as far as the counts here, maybe, because counts one, two, and three involves different allegations. Those counts and, I'm sorry, counts one, two, and four involved the allegation that my client knew that the complaining party, the protected part of the order, Anecia Claudio, was present at the time that he was present at these locations. And so as to those counts, I think the error certainly was not harmless because we have a situation here where it's kind of unique for a stocking no contact order case, but there was basically complete unfamiliarity between these two people for the most part. There were two prior encounters, but otherwise they were complete strangers, hadn't talked to each other. He'd never been introduced to her. So all he sees is a name in this order. And he had a habit, perhaps unfortunate, of taking photos of people in public at various locations, different people. And some people may not like that. It is something that people have the right to do under our constitution in most cases when there's not an order prohibiting it. So he had sort of engaged in this conduct in a number of cases, and there was nothing for him to even be able to identify the name of this person from the name on the order who this person was. So if you look at the perspective of a juror who... So are you telling me that he doesn't know the name or the identity of the person who got an OP against him? Well, what I'm saying is that the state failed to meet its burden of proving that, or at least a rational person could conclude that the state taking the evidence in the light most favorable to the defense, taking out inferences in the light most favorable to the defense, could conclude that he may not have known she was present there. And it could be a matter of not being able to recognize her. It could also potentially be the fact that he was only there for mere minutes on each of these three occasions. It's a very short period of time. A juror could potentially... And you only need one juror, of course, to believe that, you know, the state didn't quite prove this beyond a reasonable doubt to mean that he can't be convicted of these offenses. So they could have looked at it and said, well, maybe he left after he realized she was there, which would be enough for him to not be convicted of any of those three counts. Well, didn't the... I assume it's the public defender. What was the defense of the public defender that the jury was exposed to through evidence, the claim, the argument? I believe the public defender made some, maybe made a few alternative arguments. One was that he indeed, from just seeing the name on the order, would not have known who this person was in light of the fact that, you know, he had apparently, based on the state's own evidence, you know, gone around taking pictures of thousands, probably thousands of people. Okay. So clearly the jury was exposed to an argument, at least. I don't know. Was there any other evidence of a denial of knowledge? Well, I believe there was also an argument that perhaps he left upon realizing he was there as an alternative position. And he did leave quickly on the overwhelming, well, all the occasions. I mean, he was only there for a few minutes. And it's important to note that she testified that he was taking photos of her, but there are no photos. I mean, there's not a single photo of her introduced into evidence. Now the jury may have believed that because she had a photo of his license plate at the Oberweiss occasion that he was present, but that doesn't mean that if the jury was properly instructed to actually consider the mental state, I mean, as it is, the jury could have ignored that and just said, well, okay, he's there, he's guilty. But if they actually had to consider whether he knew that she was present and consciously remained there after he knew she was present, the jury could have found, as defense counsel argued, that she had just, he left at any time that he realized she was there. It's also... Was it the third count that he went to a prohibited place? Yes. Okay. So he didn't know he was at Oberweiss either then, right? Yes. Well, as the third count, I think that that sort of goes more toward the sufficiency of the evidence argument that I'm making. I think that count needs to be reversed due to insufficient evidence. So, and if I could briefly comment on that, I think there's a lot of confusion potentially that maybe went into the briefs a little bit because the order was a little bit confusing. And so it might be good to sort of go through that a little bit. So as far as my reasonable argument on count three, it's important to distinguish between the two sentences of this order. The first sentence is what's commonly called a stay away provision. That required my client to be 1,000 feet away from both Ms. Claudio and various places that were listed in the stay away prison of the order, the first sentence of the order. The second sentence of the order, and it's in the appendix, if you guys want to take away that, the second sentence is what's called an entering or remaining provision. That provision did not bar my client from coming within 1,000 feet of a place. It only barred him from actually entering or remaining a place. Now the state, recognizing that he never entered the Oberweiss, he was at a strip mall parking lot outside of the Oberweiss at all times, according to the evidence. The state recognized this and did not charge him with merely entering or remaining. They charged him with entering or remaining within 1,000 feet of the Oberweiss, which would technically be a violation of the stay away provision if the stay away provision included Oberweiss as a place that he could not go even when she's not employed there. Because it's undisputed she was not employed there at the time. Mr. Verrill, does she have to be present? No, for count three. Yeah, I'm sorry if I didn't clarify that. Yes, for count three, she did not have to be present. Well, the charge didn't allege that she was present, essentially. So we're not really debating whether she's present for count three. The other counts, she had to be present. So the problem with count three was that it didn't allege she was present. And it was based on the idea that she was previously employed at Oberweiss. But if we look at what the stay away provision, what it says is the respondent is ordered to stay at least 1,000 feet away from the petitioner, the petitioner's residence, school, daycare, employment, and other specified place. There are no specified places in the stay away provision that he has to stay 1,000 feet away from. None. It says employment, but she wasn't employed there. So if we look at this, it didn't allege that she was present within 1,000 feet. Oberweiss is not her residence, school, daycare. It's not other specified place within the first sentence of the stay away order. And all it says is her employment. That can only mean her place of employment. She testified she was not employed at Oberweiss. She was there just visiting as a customer. Well, was Oberweiss anywhere in the OP? It was listed under the entering or remaining provision, but the state did not charge my client with violating the entering or remaining provision. So the state unfortunately cannot rely on that. Now, it didn't say the word Oberweiss. It gave the address for Oberweiss in there, which doesn't give great notice to somebody, you know. But in any event, that's irrelevant. My position is that the entering or remaining provision is irrelevant completely to this case. Anything said in there doesn't mean anything because they only charged him with violating the stay away provision. And obviously, also, it's worth recognizing that it would be kind of extreme to bar him from being within 1,000 feet, two tenths of a mile from this Oberweiss, which is going to cover not this entire strip mall, probably a major road, Weber Road, and all this stuff at a time when she's not employed there and not present there. It's not even allowed for a domestic abuser under the order of protection laws. So it is allowed as a potential remedy for a stalking no contact order. But to look at this somewhat ambiguous and confusing at best order and to say that it has this broad sweeping prohibition, I think would be unfair because we really need to be looking at what did the order unambiguously prohibit when we're considering whether the state proved beyond reasonable doubt that the order prohibited the conducted issue. So I think with count three having to obviously be gone under a sufficiency of the analysis, sufficiency of the evidence analysis, then we're just looking at the other three counts for the harmless error analysis as to the jury instruction error. And they all required him to be present. And it's just a basic thing that I think it's essential that this is the kind of issue that a jury needs to make a determination on. This court cannot, didn't see her testify, can't make the credibility determinations that the jury can do when it hears, well, she says the photos are taken of her, but there are no photos. Um, and the jury could have looked at that and said, okay, maybe he was there, but maybe he didn't recognize her. Maybe when he did, he left. And, uh, that would be enough for, I think this court defined that the state failed to prove harmless error beyond a reasonable doubt, again, a very, very high standard, because this is a serious error injected into the case by the state because defense counsel objected to this, uh, improper instruction. And the state don't put the word knowingly, even though it, it filed a motion in limine saying we need, we need more evidence because the state's motion limine specifically said that, uh, we need, we need to have additional evidence to show that quote, uh, my client quote was aware of who it was. I quote, that's what page C 34 of the record 34 of the common law record. The state admits that it needs to put on this additional evidence and it's allowed to, because everyone knows this, this element is a problem. And that's why when the state then deprived the jury of being instructed in that element and allowed him to be convicted that way, that situation, that it's imperative that there'd be a new trial on those three counts. Uh, so I would ask this court to go ahead and reverse count three outright, uh, reverse counts one, two, and four due to the jury instruction issue. And to remand this case or further proceedings on the counts one, two, and four. And, uh, I would be happy to answer any questions you have at this point. Are there any questions for Mr. Vero? Not at this time. No, no. Okay. Thank you. Um, Mr. Gnidovic. Thank you. May it please the court, uh, Gary Gnidovic from the appellate prosecutor's office. Uh, before I get into any substantive arguments here, I need to take and I caught in my brief this morning as I was preparing. Um, when I speak, speak about the, um, standard of review and the reasonable doubt issue, I, uh, incorrectly cited Strickland versus Washington, which is obviously an ineffective assistance of counsel, uh, standard, not reasonable doubt. I should have cited the Jackson versus Virginia case. Uh, not withstanding, I don't need to add that case because I did cite Collins and Collins adopted the Jackson standard. And so the, the, the reasonable doubt standard, um, um, is clearly articulated in the people's brief. And I just want the court to know that prior to coming on, I did speak with, uh, Mr. Vero and he is fully aware of the fact that, I was going to present this to the court. Okay. Having, having cleaned up that procedural mess, um, the arguments presented by the state are fairly straightforward. I guess the, the, the reasonable doubt issue and the, the, uh, jury instruction, uh, with respect to, to reasonable doubt, I think it's clear that in this case, the defendant was required by the stalking, no contact order to stay 1000 feet away from petitioner, from residents, school, daycare, employment, also to identify places. And that is, um, the target store and Oberweiss dairy. And then also he was supposed to stay away from anywhere that's protected party may be. Okay. I think that the defendant's argument tries to take and tailor this to the point where says, you know, uh, entry and stay in entry order. If you think about it, how would the defendant be able to take and stay a thousand feet away from Oberweiss dairy on a, on an entry remain an entry. I mean, if, if, if you're talking about the building itself and entering to go in to order ice cream, obviously you're going to be closer than a thousand feet. The interpretation doesn't make any sense when you say, stay away from these buildings from a thousand feet. What they're talking about is that they're talking about entering upon the premises and the premises doesn't necessarily just have to be within the confines of the building itself. It can be the parking lot, the area surrounding the building. Those are the premises. And so I think in this particular case, with respect to count three, I think it's clear that the defendant was within 1000 feet of the building of Oberweiss. I believe that was the one that's on Weber road, if I'm not mistaken, uh, clearly was within a thousand feet of that building and knew that he shouldn't have been. And this kind of then, and we, we, what we do is when we get to the question of knowledge, okay, there are two cases that I cited in our brief Hoffman and Kenton, and it kind of goes along with this court's case in Woodruff. Um, basically if a defendant has knowledge of the contents of an order of protection, he knows what he's not supposed to do, where he's not supposed to be. And if he doesn't act, that basically violates that knowledge that he has, he's acting knowingly. That's, uh, uh, Hoffman and Hinton both, as well as the fact that, that this court's, uh, Woodruff case kind of did the same thing where the defendant was not supposed to be within, I believe 300 feet of the premises of his ex-wife. And he supposedly rented a, uh, uh, a shed from some neighbor. And of course he, he basically testified at trial. Hey, I thought I was only about a hundred feet away. Well, what they did is they took a measurement and clearly he was well within the 800 feet. And so this court rejected his, his, his innocent presence argument. And what they did, what this court did is this court found that basically he acted knowingly. When we get to the jury instructions on this case, I think it's clear that the jury in order to convict this defendant would have had to have found that he acted knowingly. Because if we look at, People's Instruction 13, that defined actual knowledge as direct and clear knowledge of what is prescribed. People's Instruction 14 was modified and it said that a person commits an offense after he acquires actual knowledge of the contents of an order and commits an act that is prohibited. And then if you look at the issues instructions, I think the issues instructions pretty much set forth all of such that if the defendant, the jury finds that the defendant has acted with knowledge that these acts are prohibited, he's obviously acting knowing that he's violating the order of protection. And what's also interesting is in this case, I think the, the assistant state's jury argued this, and I think defendant's brief contains this. When we talk about an order of protection, none of that is so much the stalking or no contact order of protection. If you look at just an order of protection, even that, jury instruction on that doesn't contain a knowing element with respect to the saying that he has to know the acts. And if you look at, there are two, there's the domestic, there's the order of protection, and there's the stalking no contact order. All three of those all paired each other. All three of them basically say that, you know, the defendant does have to know what he's doing, but none of those, and the jury instructions contain that as an end, that basically the jury has to find specifically that when he acts, he's knowingly acting. That is done through, like I said, through the, the definition of 14, as well as the issues instruction, all clearly indicate that the defendant in order to be found guilty is going to have to have acted knowingly with knowledge of what he's doing. And so based on the cases of Hoffman Hinton, as well as this court's Woodruff case, basically the evidence here was sufficient to prove the defendant guilty beyond a reasonable doubt of being within 1,000 feet of the premises, as well as the fact that if this court were to find any error, I think that the evidence is sufficient that any error in the instructions is harmless. So if there are any questions, I'd be more than happy to respond. Other than that, the people would simply request this court to affirm the defendant's convictions as entered. Are there any questions for Mr. Gunitevic? No. I, I have one, you know, you say he has to knowingly act, right? I was kind of confused a little bit with that. I thought it was that knowingly violated the order, or what, what are you going to know? What aspect? Well, the defendant's talk, the defendant talks about the fact that in order for a defendant to be found guilty, he has to knowingly violate the order of protection, knowingly act of what he's doing. But he keeps talking about the fact of, hey, you know, my, maybe my defendant didn't, didn't recognize this individual. Maybe he didn't this, maybe he didn't that. Okay. And so what I tried, what I'm trying to do is I'm trying to tie it all together to say that basically, if you know what you have to take and violate, if you know, excuse me, if you know what you have to take and stay away from, who you have to stay away from, which in this case he did, when he basically does something that violates that, he's acting knowingly. He's knowingly committing the act of violating the order of protection, and he's knowingly violating the order of protection. And, and so in that particular sense, in that way, basically isn't the offense that he's within 1,000 feet of a specific individual. 1,000 feet of a specific individual as well as 1,000 feet with respect to count three anyway. Well, let's leave count three alone. Okay. Because the element doesn't just go to the building. It goes to every act that he's prohibited from doing. Correct. Correct. And for example, if you take a look at the offenses that were alleged with respect to the other dairy place, Andy's. Andy's Custard. Yeah. He pulls up, he parks, he looks at her, he picks up his camera, he does his thing, comes back 20 minutes later, does the same thing, doesn't come through the checkout line, doesn't come through his order, goes through the pass-by line, stops, and sits there for two minutes, at least according to what counsel said. Okay. He's always there for only two minutes. I don't care if he's there for just a minute. If he's there for five minutes. The fact is he's there. He does recognize who he's stalking. And the fact that the, and stalking basically, let me find the definition here. Got the definition of stalking. Stalking is defined as conduct directed at a specific person. When you take a look at the conduct, you got to look at what the victim here, Claudio, testified to as to what she saw, what she observed. When you take his conduct, you have to, a lot of times knowledge, there's, I think that the, your honor is. So then knowing, knowing he has to know the specific person is present. Right. And, and obviously he knows who he's taking the picture of. He knows who the order of protection is against. Right. And if you take a look at what he does, especially when he basically comes, when he's at the dairy, when he sees her coming out, he leaves. That doesn't show that it's an innocent conduct. He's more or less, he's basically trying to take it and not be seen by her. If you will, outside, he's trying to get away now. And if you look at Andy's custard, when he comes back, what does that, what does that be speak of? To me, that'd be speaks of the fact that he recognized her the first time he went through, came back and did it again. Did he have pictures of her? Pardon me? Did he have pictures of her? That I, that I honestly cannot say your honor, because there was no evidence that was deduced. And I don't think there was anything taken off his phone. I don't think, I don't know that anybody tried to take and do anything with his phone and to get the pictures off of it. I just, I just wondered because the first incident where he came to the attention of the police, it was this father calling, saying that he was taking pictures of his daughter, and there were no pictures of the daughter on his phone either. That would be, that would be correct. There were, there were many, many pictures, but none of his daughter. Right. So, so obviously he's got an eye problem in addition to his mental health problem with OCD. You know, and, and, and, and when you, I guess what I picture in my mind is, I go to, I go to Andy's and they even go, I even go to the, the count three when he's outside the building. Okay. She's sitting there in a window. She's front and center. Okay. It's not like it's, it's, it's not like it's, it's, it's difficult to take him in and say he's, he's viewing all over the place where he's viewing, could be viewing left, but she's front and center. And when he comes back to Andy's after, after, going to Andy's, which, which I guess it, it, it just, it just kind of, to me, it, it, it, it kind of transcends mere coincidence. How in the world, with all these places to go in Bowlingbrook and all these places to go, everywhere to go, how does he end up at Andy's in the pass-by window with her working there? I, I guess I, I, I can't, I find that so hard to believe that it's just coincidental, but even if one wants to take and say, maybe the first one was coincidental and he recognized her, certainly when he comes back 20 minutes later, what does that be speaking of? To me, it's, it's, it's, it's just clearly evidence beyond a reasonable doubt that, that this defendant knew this victim and knowingly violated the stalking, no contact. Okay. Justice Davenport, you had a question. So I do. Thank you, Mr. Knittervik. The argument that the defendant has in effect almost two to be there, correct? Correct. Okay. So if he's there, but doesn't take photos, does that diminish in any, any way the violation that the state is arguing that he made, even if he took no pictures at all? It doesn't make any difference if he takes pictures or not. Right. The order says, the order says has to stay away from her. Okay. Thank you. Thank you. Are there any other questions? No. Okay. Thank you, your honors. Thank you. Mr. Vero, any rebuttal? You're muted. I'm sorry. Thank you for pointing that out. Yes, I do have some rebuttal. So it appears that the state, again, consisting with how it was being debriefed is conceding that they must prove that my client knew for three of the counts that my client knew that he was within 1,000 feet of the location where the protected party was present. So I think the other state's other arguments in terms of the jury instructions, you know, they don't carry any weight there because the jury instructions simply have to include that element if it's an precedent. In terms of the idea, I think Justice Davenport is correct that there need not be photos for the client to be guilty of this offense. It is just a matter of him coming within a certain distance, but he has to know that the person is present when he's doing that. And he is at a location where there are a number of other people. There's a lot to maybe suggest that he doesn't have much familiarity with this person. The prior incidents were almost two years before this, and there were only two prior encounters. Among the many encounters that he's had with 1,000, mostly there are hundreds of people that he took pictures of in one day that the state admitted evidence of. So it's quite possible that he may not have known, and I think that's really something ultimately that should be left to the jury. I mean, the state took it away from the jury, and they're essentially trying to make your honors the jury in this case, and have your honors decide whether a rational person could believe this. And I think you'd have to say that... And you're saying this, Mr. Verrill, because the instructions lacked that they had to make that finding with knowledge of her presence? Yes, yes. So I think that it's really important that there be a trial with the proper instructions so the jury can make that determination instead of this court, especially in this situation where, again, it's different than maybe some other stalking no-contact cases where there could be a lot of familiarity between the people. And here, it might be harder for someone who's had so few prior encounters to recognize them. And I think we can't say that it would be completely irrational for a single juror to look at this and say, I'm not sure if the state has proven that he knew she was present in the few minutes that he's at these locations. What did the public defender argue in closing? Well, I mean, even if the public defender argued it, though, the jury is bound by the instructions given to it by the court. So even if the public defender had raised these arguments, the jury could have just looked at the instructions and said, okay, well, we don't need to address whether he knew she was present. The judge specifically told us all he has to do is commit the act of being within her presence after being served out with notice of the order. And so we're not even going to think about the defense counsel's argument. So what you're saying is the instructions were analogous to a strict liability offense. Yes. Okay. When the offense itself required mens rea. Yes. And the element of mens rea was not part of the instructions. Yes. But they were part of the entire argument of the defender, weren't they? The defendant did argue that, but the defense counsel's request to instruct the jury in a way that allowed them to make the finding that he wanted them to reach was blocked by the state, which said, don't instruct them. The state basically said, this is an element we want to evidence of it. We want to introduce other conduct evidence of it. We have to prove that he knowingly was in her presence. And then they turned around and said, but don't tell the jury about that. And I think it's a situation where it needs to be a new trial where the same arguments can be made with the proper instructions so the judge jury can reach it. If I could just briefly comment on the count three reasonable argument, uh, the state had argued that, uh, you know, the parking lot could be the promises of this place, but the key thing is the state didn't prove that the parking lot was the promises. The parking lot of the strip mall was owned by Oberweiss or anything like that. They had no evidence introduced of that. And that's why they just charged him. I mean, they could have gone about it that way if that was the case, but instead they just charged him with filing the stay away provision of being within 1000 feet. And the order didn't prohibit him, uh, in the stay away provision, the first sentence of the order, it didn't mention Oberweiss. Um, so it had the address, didn't it? No, that was in the second sentence, the entering or remaining provision. Okay. So, uh, he was only charged with violating the stay away provision of the order. And the state didn't prove him guilty of that because they didn't prove that this was a place of our employment. They didn't prove that the parking was part of the Oberweiss premises. I see my time is run. So unless there are any questions, are there any further questions for Mr. Barrow? No, not for me. Okay. There are no further questions. Um, we thank you both for your arguments this morning. We will take the matter under advisement and we'll issue a written order as quickly as possible.